[Cite as *State v. Roberts*, 2015-Ohio-5044.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF WAYNE | ) | |

| STATE OF OHIO | C.A. No. 14AP0035 |
|---|---|
| Appellee | |
| v. | APPEAL FROM JUDGMENT ENTERED IN THE |
| DANIELLE A. ROBERTS | WAYNE COUNTY MUNICIPAL COURT COUNTY OF WAYNE, OHIO |
| Appellant | CASE No. 2014 CRB 000263 |

DECISION AND JOURNAL ENTRY

Dated: December 7, 2015

SCHAFER, Judge.

{¶1} Defendant-Appellant, Danielle Roberts, appeals the judgment of the Wayne County Municipal Court convicting her on one count of domestic violence and sentencing her to a 30-day jail term and 12 months of community control sanctions. For the reasons that follow, we affirm the trial court's judgment.

I.

{¶2} Roberts was charged on one count of domestic violence in violation of R.C. 2919.25(A), a misdemeanor of the first degree, and one count of assault in violation of R.C. 2903.1.3(A), also a misdemeanor of the first degree. The complaint arose from an incident in which M.R., Roberts' former boyfriend, sustained a bite mark on his inner left thigh and a broken toe. According to M.R., he sustained his injuries as a result of Roberts attempting to force her way into his residence so that she could confront his new girlfriend. During the course of forcing her way into the residence, Roberts allegedly bit M.R. and stomped on his toe.

Conversely, Roberts alleged that she only bit M.R. after he shoved her into the wall and put his hands around her neck. She denied stomping on his toe.

{¶3} Roberts never filed a jury demand so this matter proceeded to a bench trial. The trial judge entered a guilty finding on the domestic violence charge and it dismissed the assault count since it was charged in the alternative. Roberts was subsequently sentenced to 30 days in jail and 12 months of community control sanctions. The trial court also ordered that Roberts face an additional jail term of 150 days if she fails to comply with her community control sanctions.

{¶4} Roberts filed this timely appeal, presenting three assignments of error for our review.[1]

## II.

### Assignment of Error I

**Appellant's conviction for domestic violence is unconstitutional as it is against the manifest weight of the evidence and is based on insufficient evidence, in violation of the Fifth and Fourteenth Amendments to the United States Constitution and Article One, Sections Ten and Sixteen of the Ohio Constitution.**

{¶5} In her first assignment of error, Roberts argues that there is insufficient evidence in the record to support her domestic violence conviction. She also contends that her conviction is against the manifest weight of the evidence. We disagree on both points.

{¶6} Before turning to the merits of Roberts' argument, we must outline the scope of our review. Roberts' argument rests exclusively on the position that "the State failed to meet its burden of demonstrating [that M.R.] is a family or household member." Consequently, her first

---

[1] The trial court stayed the execution of Roberts' sentence, pending the outcome of this appeal.

assignment of error only challenges the sufficiency and manifest weight of the evidence as it relates to the family or household member element of domestic violence. As a result, we constrain our review to this issue.

{¶7} A sufficiency challenge of a criminal conviction presents a question of law, which we review de novo. *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997). In carrying out this review, our "function * * * is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus. After such an examination and taking the evidence in the light most favorable to the prosecution, we must decide whether "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* Although we conduct de novo review when considering a sufficiency of the evidence challenge, we "neither resolve evidence conflicts nor assess the credibility of the witnesses, as both are functions reserved for the trier of fact." *State v. Jones*, 1st Dist. Hamilton Nos. C-120570, C-120571, 2013-Ohio-4775, ¶ 33.

{¶8} A sufficiency challenge is legally distinct from a manifest weight challenge. *Thompkins* at 387. Accordingly, when applying the manifest weight standard, we are required to consider the whole record, "weigh the evidence and all reasonable inferences, consider the credibility of the witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Otten*, 33 Ohio App.3d 339, 340 (9th Dist.1986). Courts are cautioned to only reverse a conviction on manifest weight grounds "in exceptional cases," *State v. Carson*, 9th Dist. Summit No. 26900, 2013-Ohio-5785, ¶ 32,

citing *Otten* at 340, where the evidence "weighs heavily against the conviction," *Thompkins* at 387.

**{¶9}** Roberts was convicted under R.C. 2919.25(A), which provides that "[n]o person shall knowingly cause or attempt to cause physical harm to a family or household member." A "family or household member" is pertinently defined as "[a] spouse, a person living as a spouse, or a former spouse of the offender[.]" R.C. 2919.25(F)(1)(a)(i). "Person living as a spouse" is defined as "a person who is living or has lived with the offender in a common law marital relationship, who otherwise is cohabiting with the offender, or who otherwise has cohabited with the offender within five years prior to the date of the alleged commission of the act in question." R.C. 2919.25(F)(2).

**{¶10}** "The offense of domestic violence * * * arises out of the relationship of the parties rather than their exact living circumstances." *State v. Williams*, 79 Ohio St.3d 459 (1997), paragraph one of the syllabus. As a result, the Supreme Court of Ohio has declared that "[t]he essential elements of 'cohabitation' are (1) sharing of familial or financial responsibilities and (2) consortium." *Id.* at paragraph two of the syllabus. The Court identified the following factors for courts to consider when deciding whether the elements of cohabitation are satisfied:

> Possible factors establishing shared familial or financial responsibilities might include provisions for shelter, food, clothing, utilities, and/or commingled assets. Factors that might establish consortium include mutual respect, fidelity, affection, society, cooperation, solace, comfort, aid of each other, friendship, and conjugal relations.

*Id.* at 465; *see also State v. Gomez*, 9th Dist. Summit Nos. 25496, 25501, 2011-Ohio-5475, ¶ 9 ("This Court has adopted the Ohio Supreme Court's definition of 'cohabitation[.]'").

**{¶11}** The record contains the following evidence regarding the family or household member element of domestic violence. Officer Daniel Whitmore, one of the responding police

officers to the incident at M.R.'s residence, testified that he "observed belongings [in the residence] that were what I believe to be female belongings[,] there were like some boxes in a second bedroom, like an office * * *, photographs, the screen saver on the computer was a picture of Ms. Roberts. There [was] also women's clothing in the closet." Officer Gregory Kolek, the other responding police officer, testified that he interviewed Roberts at M.R.'s residence and that she described M.R. as her "long time live-in boyfriend," which was consistent with Officer Whitmore's observations.

{¶12} M.R. testified that Roberts was his girlfriend for four and a half years and that their relationship ended in February or March 2014, which was shortly before the April 2014 incident that gave rise to the complaint against Roberts. Despite the end of their relationship, M.R. indicated that he still cared for her and that he committed to continue financially supporting her until she graduated from school by helping to pay for her gas and her car payment. He also stated that while Roberts had a separate residence during their romantic relationship, she kept personal items at his residence and "she had stayed at my house[.]"

{¶13} In her testimony, Roberts confirmed that she was in a romantic relationship with M.R. until March 2014, that M.R. continued to financially support her after their breakup, and that she still had personal items at his residence in April 2014. Roberts also indicated that she had a garage door opener for M.R.'s residence, which she used as a key, and that after the end of their romantic relationship, she continued to go to the residence to do her homework. She described her arrangement with M.R. as follows:

> The agreement was that my items could stay there [M.R.'s residence] until graduation because that is where I did my homework. I used the computer. I used the internet. It was a quiet respite for me to [be] able to do my homework because it is a little noisy at my *main residence* because of my children.

(Emphasis added.) Roberts' use of the term "main residence" to describe her residence where her children live connotes that she spent a substantial amount of time at M.R.'s residence to the point that it was a "secondary residence" for her. Additionally, Roberts testified that she cleaned M.R.'s residence on the day of the incident that gave rise to this matter.

{¶14} After reviewing the record and taking the evidence in the light most favorable to the prosecution, we determine that the State presented sufficient evidence to prove beyond a reasonable doubt that M.R. was a family or household member under R.C. 2919.25. Indeed the evidence is of such a nature that we also conclude that the trial court did not lose its way in reaching this determination. Officer Whitmore concluded that Roberts lived with M.R. based on his observations of the house while she described herself as M.R.'s live-in girlfriend during her interview with Officer Kolek. Roberts' and M.R.'s testimony regarding her use of the residence further confirms that, even after the end of their romantic relationship, Roberts spent a significant amount of time at M.R.'s residence and they shared financial responsibilities. As a result, Roberts' domestic violence conviction is supported by sufficient evidence and is not against the manifest weight of the evidence.

{¶15} Accordingly, we overrule Roberts' first assignment of error.

### Assignment of Error II

**The trial court erred when it proceeded to a bench trial when no jury waiver was received, in violation of section 2945.05 of the Ohio Revised Code; the Fifth, Sixth and Fourteenth Amendments to the United States Constitution; and Article One, Sections Five, Ten and Sixteen of the Ohio Constitution.**

{¶16} In her second assignment of error, Roberts contends that the trial court erred by conducting a bench trial without first obtaining a waiver of her jury trial right under R.C. 2945.05. We disagree.

{¶17} "The Sixth Amendment to the United States Constitution, made applicable to the states through the Fourteenth Amendment, guarantees an accused the right to trial by jury." *State v. Lomax*, 114 Ohio St.3d 350, 2007-Ohio-4277, ¶ 6, citing *Duncan v. Louisiana*, 391 U.S. 145 (1968). Further, "[t]he accused's right to be tried by a jury is secured in this state by Article I, Section 10 of the Ohio Constitution." *State v. Tate*, 59 Ohio St.2d 50, 52 (1979). This provision states that "[i]n any trial, in any court, the party accused shall be allowed * * * a speedy public trial by an impartial jury of the county in which the offense is alleged to have been committed[.]" Ohio Constitution, Article I, Section 10. Nevertheless, "'[t]he guarantee of a jury trial in criminal cases contained in the state and federal Constitutions is not an absolute and unrestricted right in Ohio with respect to misdemeanors, and a statute, ordinance or authorized rule of court may validly condition the right to a jury trial in such a case on a written demand therefor * * *.'" *Tate* at 52, quoting *Mentor v. Giordano*, 9 Ohio St.2d 140 (1967), paragraph one of the syllabus; *see also State v. Conn*, 3d Dist. Union No. 14-08-08, 2008-Ohio-5317, ¶ 10 ("[I]t is permissible for the State to require, by statute or rule, an affirmative act on the part of the defendant to demand a jury trial in a misdemeanor case.").

{¶18} Crim.R. 23(A) provides that "[i]n petty offense cases, where there is a right of jury trial, the defendant shall be tried by the court unless he demands a jury trial. Such a demand must be in writing and filed with the clerk of court * * *. Failure to demand a jury trial as provided in this subdivision is a complete waiver of the right thereto." Due to these dictates, we have previously stated that "[w]here a jury demand in a petty offense case is not timely made pursuant to Crim.R. 23(A), R.C. 2945.05['s requirements for the waiver of jury trial right] d[o] not apply." *State v. Barr*, 9th Dist. Summit No. 17342, 1996 WL 99774, * 2 (Mar. 6, 1996); *see also State v. Lecorcik*, 9th Dist. Summit No. 24388, 2009-Ohio-942, ¶ 6 ("[The defendant] had a

right to a jury trial under Crim.R. 23(A), but was required to file a proper jury demand to assert that right."). Roberts was charged on two misdemeanor counts that subjected her to a maximum prison term of six months. R.C. 2919.25(D)(2), 2929.24(A)(1). As a result, Roberts was charged on petty offenses for the purposes of Crim.R. 23(A) and she had to file a written jury demand to preserve her rights. *See* Crim.R. 2(D) (defining "petty offense"). However, Roberts concedes that she did not file a written jury demand. Under well-settled law, this failure operates as a complete waiver of her jury trial right and it precludes the application of R.C. 2945.05's requirement that the trial court obtain a written waiver before conducting a bench trial.

{¶19} Accordingly, we cannot find any error in the trial court conducting a bench trial in accordance with the dictates of Crim.R. 23(A) and we overrule Roberts' second assignment of error.

### Assignment of Error III

**Defendant's conviction is void where she was prejudiced by improper cross-examination and impeachment by the prosecuting attorney, in violation of Rule 609 of the Ohio Rules of Evidence and in violation of Appellant's Fifth and Fourteenth Amendment rights, and where counsel provided ineffective assistance of counsel by failing to object to the improper impeachment, in violation of *Strickland v. Washington* and the Sixth and Fourteenth Amendments to the United States Constitution.**

{¶20} In her third assignment of error, Roberts asserts that she received ineffective assistance of counsel. We disagree.

{¶21} We may only reverse a conviction on the basis of ineffective assistance of counsel where we determine that (1) trial counsel's performance was deficient; and (2) "but for [trial] counsel's deficient performance, the result of trial would have been different." *State v. Velez*, 9th Dist. Lorain No. 13CA010518, 2015-Ohio-642, ¶ 18, citing *Strickland v. Washington*, 466 U.S. 686, 687 (1984). Trial counsel's performance is deficient only where it falls "below an

objective standard of reasonable representation." *State v. Bradley*, 42 Ohio St.3d 136 (1989), paragraph two of the syllabus. In assessing the deficiency of the performance, though, we "'must indulge a strong presumption that counsel's performance falls within the wide range of reasonable professional assistance.'" *Strickland* at 689, quoting *Michel v. Louisiana*, 350 U.S. 91, 101 (1955). Due to this presumption, we have previously recognized that "trial counsel's failure to make objections is within the realm of trial tactics and does not establish ineffective assistance of counsel." *State v. Smith*, 9th Dist. Wayne No. 12CA0060, 2013-Ohio-3868, ¶ 24.

{¶22} Roberts argues that her trial counsel performed deficiently by failing to object to evidence that Roberts has a previous misdemeanor conviction for disorderly conduct. She contends that the evidence was improper impeachment evidence of a previous conviction under Evid.R. 609. The State counters that the evidence was proper since it rebutted Roberts' testimony that she is not a violent person. We ultimately need not decide this issue since regardless of the evidence's admissibility, trial counsel's failure to object did not affect the outcome of trial.

{¶23} The trier of fact in this matter was the trial judge. "'A trial judge is presumed to know the law and to consider only the relevant, material and competent evidence in arriving at a decision.'" *State v. Roy*, 9th Dist. Lorain No. 13CA010404, 2014-Ohio-5186, ¶ 63, quoting *State v. Diaz*, 9th Dist. Lorain No. 02CA008069, 2003-Ohio-1132, ¶ 39. Roberts has failed to overcome this presumption on appeal. *See State v. Lowe*, 9th Dist. Summit No. 25862, 2012-Ohio-907, ¶ 13 (holding that the defendant failed to prove prejudice prong of the *Strickland* test since trial judge was finder of fact and no indication that she relied on purportedly inadmissible hearsay statements when rendering finding of guilt). There is no indication that the disorderly conduct conviction's introduction affected the trial judge's thinking in any way. As a result,

Roberts has failed to satisfy the second prong of the *Strickland* test and has not shown that she received ineffective assistance of counsel.

**{¶24}**  Accordingly, we overrule Roberts' third assignment of error.

### III.

**{¶25}**  Having overruled all of Roberts' assignments of error, we affirm the judgment of the Wayne County Municipal Court.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Wayne County Municipal Court, County of Wayne, State of Ohio, to carry this judgment into execution.  A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run.  App.R. 22(C).  The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

JULIE A. SCHAFER
FOR THE COURT

HENSAL, P. J.
CARR, J.
<u>CONCUR.</u>

<u>APPEARANCES:</u>

ADAM VAN HO, Attorney at Law, for Appellant.

DANIEL R. LUTZ, Prosecuting Attorney, and NATHAN R. SHAKER, Assistant Prosecuting Attorney, for Appellee.