[Cite as *State v. Henry*, 2016-Ohio-680.]

STATE OF OHIO       )           IN THE COURT OF APPEALS
                           )ss:      NINTH JUDICIAL DISTRICT
COUNTY OF SUMMIT    )

| | |
|---|---|
| STATE OF OHIO | C.A. No. 27758 |
| Appellee | |
| v. | APPEAL FROM JUDGMENT ENTERED IN THE |
| MICHAEL HENRY | AKRON MUNICIPAL COURT COUNTY OF SUMMIT, OHIO |
| Appellant | CASE No. 14 CRB 9088 |

DECISION AND JOURNAL ENTRY

Dated: February 24, 2016

SCHAFER, Judge.

{¶1} Defendant-Appellant, Michael Henry, appeals the judgment of the Akron Municipal Court convicting him of two misdemeanors and sentencing him to a jail term partially suspended on the condition that he comply with a variety of community control sanctions, including a no-contact order for "all Metro Parks." For the reasons that follow, we affirm the trial court's judgment.

I.

{¶2} Henry was relevantly charged with failure to comply with the signal of a police officer in violation of R.C. 2921.331(B), a first degree misdemeanor, and public indecency in violation of R.C. 2907.09(A)(2), a third degree misdemeanor. The charges arose from an incident that occurred at Sand Run Metro Park in which Henry was caught masturbating while under one of the park's pavilions. During this incident, Henry was looking at a nearby woman, K.S., who left the pavilion after noticing Henry's actions.

{¶3}   K.S. reported Henry's actions to Lieutenant Anthony Shellenbarger of the Summit County Metro Parks Rangers.  Lt. Shellenbarger first attempted to approach Henry while he was walking from the pavilion to a parking lot where his vehicle was parked.  But, by the time Lt. Shellenbarger called out to Henry, he was getting into his vehicle and preparing to leave the park.  After Henry's vehicle started to pull away, Lt. Shellenbarger got into his cruiser and followed Henry as he proceeded to a strip mall at the intersection of Portage Path and Merriman Road.

{¶4}   Once Henry pulled into the strip mall and parked, Lt. Shellenbarger parked his cruiser at an angle towards Henry's vehicle, got out, and began to question Henry regarding K.S.'s report.  Henry denied masturbating in the park and left the parking lot by turning southbound onto Portage Path.  Lt. Shellenbarger got back into his cruiser, followed Henry, and activated his overhead lights and siren upon getting onto Portage Path.  Henry turned right onto Merriman Road and accelerated before pulling to the side of the road 200 yards away.  Lt. Shellenbarger then cited Henry and arrested him.  An unwrapped condom was found on Henry's person and police also discovered more unwrapped condoms and a container of petroleum jelly in Henry's vehicle.[1]

{¶5}   This matter proceeded to a jury trial after which the jury returned guilty verdicts on the failure to comply with the signal of a police officer and public indecency charges.  At the sentencing hearing, the trial judge informed Henry that he would serve a one-year term of community control sanctions.  On the failure to comply conviction, the trial court sentenced

---

[1] Lt. Shellenbarger referred to the substance recovered from Henry's vehicle as "petroleum jelly" while another officer who handled the evidence referred to the substance as "cocoa butter."  For the purposes of this opinion, we have elected to use the term "petroleum jelly" but the exact identity of the substance is immaterial to our resolution of this matter.

Henry to a 180-day jail term with 150 days suspended on the condition that he comply with his community control sanctions. As to the public indecency conviction, the trial court sentenced Henry to a 60-day jail term with 30 days suspended on several conditions, including that he have "no contact with * * * all Metro Parks."

{¶6} This timely appeal followed, which presents eight assignments of error for our review. Since the third assignment of error relates to the quantum of evidence, we will address that assignment first. Additionally, since the first and second assignments of error both challenge the evidence supporting Henry's failure to comply conviction, we will address those assignments together. And, because the fifth and seventh assignments of error relate to Henry's ineffective assistance of counsel claim, we will address them together.

## II.

### Assignment of Error III

**The trial court committed reversible and plain error by allowing the State to present irrelevant and prejudicial evidence during the trial.**

{¶7} In his third assignment of error, Henry argues that it was erroneous to admit evidence that he had unwrapped condoms and petroleum jelly on his person and in his vehicle. Specifically, he contends that this evidence was irrelevant and unfairly prejudicial. Because Henry has not properly preserved this issue for appellate review and has failed to develop the requisite argument, we decline to address this contention.

{¶8} Evid.R. 402 limits the admission of evidence to relevant evidence, which is evidence that has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Evid.R. 401. Even if evidence is relevant, it is still "not admissible if its probative value is substantially outweighed by the danger of unfair prejudice[.]" Evid.R. 403(A).

Generally, we review a trial court's admission of evidence under these provisions for an abuse of discretion. *State v. Yarbrough*, 95 Ohio St.3d 227, 2002-Ohio-2126, ¶ 40, quoting *State v. Allen*, 73 Ohio St.3d 626, 633 (1995).

{¶9} But, a party is required to state a "timely objection or motion to strike" when the evidence is offered. Evid.R. 103(A)(1). That did not occur here. At trial, Lt. Shellenbarger and another officer identified the unwrapped condoms and petroleum jelly during their testimony and they testified to the items' recovery from Henry's person and vehicle. During this testimony, the items were shown to the jury and Henry did not object at any point during the testimony and identification of these items. Rather, he only objected on the basis of irrelevance and unfair prejudice after the close of the State's evidence.

{¶10} "When a defendant fails to contemporaneously object to the testimony, identification, and publication of photographs [and other items introduced as exhibits] to the jury, and only later objects, after the close of the State's evidence when the photographs [and other items] are being admitted into evidence, he forfeits the matter for review on appeal." *State v. Sykes*, 9th Dist. Summit No. 25263, 2011-Ohio-293, ¶ 8. Consequently, we determine that by failing to contemporaneously object to the unwrapped condoms and petroleum jelly during the officers' testimony about those items, Henry has forfeited all but plain error in their admission into evidence. *See id.* at ¶ 8 (determining that the defendant forfeited all but plain error since he "did not object to the photographs or items themselves until after the State rested"). Although Henry has preserved plain error review on this point, he has failed to argue the existence of plain error on appeal. "This Court has repeatedly noted that it will not sua sponte fashion an unraised plain error argument and then address it." *State v. Jacobs*, 9th Dist. Summit No. 27545, 2015-Ohio-4353, ¶ 33. And, "as [Henry] failed to develop his plain error argument, we do not reach

the merits and decline to address this argument." *State v. Hairston*, 9th Dist. Lorain No. 05CA008768, 2006-Ohio-4925, ¶ 11.

**{¶11}** Accordingly, we overrule Henry's third assignment of error.

### Assignment of Error I

**The trial court committed reversible and plain error when it found Mr. Henry guilty of failure to comply with the order of a police officer because the evidence was insufficient to support such findings.**

### Assignment of Error II

**Mr. Henry's conviction for failure to comply with the order of a police officer is against the manifest weight of the evidence.**

**{¶12}** In his first and second assignments of error, Henry challenges his failure to comply conviction as unsupported by sufficient evidence and against the manifest weight of the evidence. We disagree on both points.

**{¶13}** A sufficiency challenge of a criminal conviction presents a question of law, which we review de novo. *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997). In carrying out this review, our "function * * * is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus. After such an examination and taking the evidence in the light most favorable to the State, we must decide whether "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* Although we conduct de novo review when considering a sufficiency of the evidence challenge, we "'neither resolve evidentiary conflicts nor assess the credibility of witnesses, as both are functions reserved for the trier of fact.'" *State v. Jarvis*, 9th Dist. Lorain No. 14CA010667, 2015-Ohio-4219, ¶ 10, quoting *State v. Jones*, 1st Dist. Hamilton Nos. C-120570, C-120571, 2013-Ohio-4775, ¶ 33.

{¶14} A sufficiency challenge is legally distinct from a manifest weight challenge. *Thompkins* at 387. Accordingly, when applying the manifest weight standard, we are required to consider the whole record, "weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Otten*, 33 Ohio App.3d 339, 340 (9th Dist.1986). Courts are cautioned to only reverse a conviction on manifest weight grounds "in exceptional cases," *State v. Carson*, 9th Dist. Summit No. 26900, 2013-Ohio-5785, ¶ 32, citing *Otten* at 340, where the evidence "weighs heavily against the conviction," *Thompkins* at 387.

{¶15} Henry was convicted under R.C. 2921.331(B), which provides that "[n]o person shall operate a motor vehicle so as to willfully elude or flee a police officer after receiving a visible or audible signal from a police officer to bring the person's motor vehicle to a stop." He contends that the State failed to present sufficient evidence regarding the "willfully elude or flight" element of the offense and that it was against the manifest weight of the evidence for the jury to conclude that that element was satisfied. However, after reviewing Lt. Shellenbarger's testimony, we disagree.

{¶16} The State has identified Henry's flight in his vehicle from the strip mall parking lot as the basis for his failure to comply conviction. This flight occurred near the intersection of Portage Path and Merriman Road. After pulling out of the strip mall onto Portage Path, Henry turned right onto Merriman Road. Lt. Shellenbarger testified as follows regarding his observation of Henry's vehicle:

Q: So [Henry] turns onto Merriman. What is traffic like at this point?

A: That intersection gets really busy [at the time of the incident], so it was quite congested. * * * He was traveling westbound. As soon as I turned onto

Merriman I could see that he was accelerating through traffic. I believe the speed limit is 35 miles an hour through there. He was passing every car that was traveling westbound, as well, weaving in and out of traffic.

Q:      What did you do in reaction to this?

A:      As soon as I – as soon as I got onto Portage Path, I activated my overhead lights as the subject was fleeing from me and, subsequently, with a siren turned on, as well, so my lights and sirens were on and I was proceeding to pursue Mr. Henry.

Q:      And you turned those on when you got onto Portage Path to go south towards Merriman?

A:      That's correct.

Q:      Okay. Still on when you made the right turn to go west on Merriman? * * * What did Mr. Henry do, then, driving wise?

A:      It seemed like there was an acceleration there. Again, like I said, you could see that there was weaving in and out of traffic. Nearly went through a red light. The light was in the middle of changing from yellow to red as his vehicle went through the intersection at Weathervane and Merriman. By that time, all the other traffic had moved off to the side as an emergency vehicle was coming through and I was able to catch up with him pretty closely after Weathervane Lane.

Q:      In terms of distance, how far would you say he traveled before he stopped, Mr. Henry stopped? * * *

A:      It was, approximately, I want to say, 200 yards.

{¶17} This testimony reflects that after Lt. Shellenbarger activated his overhead lights and siren, Henry accelerated, weaved through traffic, and traveled another 200 yards. It further reflects that Lt. Shellenbarger's overhead lights were visible and the siren was audible since the other motorists between Henry and Lt. Shellenbarger pulled over to the side of the road for the police cruiser. In light of this testimony, we must reject Henry's argument there was insufficient evidence to show that he willfully eluded or fled from Lt. Shellenbarger. Also, since Henry's

manifest weight challenge rests on the same basis as his sufficiency challenge, we must likewise reject that challenge.

{¶18} Accordingly, we overrule Henry's first and second assignments of error.

**Assignment of Error IV**

**The trial court committed reversible and plain error in sentencing Mr. Henry for public indecency as a third degree misdemeanor instead of a fourth degree misdemeanor, because the jury verdict form did not include the degree of the offense, nor any aggravating elements.**

{¶19} In his fourth assignment of error, Henry argues that the verdict form for his public indecency conviction was insufficient to convict him of a third degree misdemeanor since it did not include the level of offense or the existence of any elevating circumstances. As a result, Henry contends that he should have been convicted of a fourth degree misdemeanor. We disagree.

{¶20} When a defendant fails to object to a verdict form at trial, he forfeits all but plain error. *State v. Eafford*, 132 Ohio St.3d 159, 2012-Ohio-2224, ¶ 11; *State v. Jackson*, 9th Dist. Lorain No. 14CA010555, 2015-Ohio-2473, ¶ 74. The plain error doctrine, as it is outlined in Crim.R. 52(B), may only be invoked where the following three elements apply:

> First, there must be an error, i.e., a deviation from the legal rule. * * * Second, the error must be plain. To be "plain" within the meaning of Crim.R. 52(B), an error must be an "obvious" defect in the trial proceedings. * * * Third, the error must have affected "substantial rights" * * * [and] affected the outcome of trial.

(Citations omitted.) *State v. Barnes*, 94 Ohio St.3d 21, 27 (2002). We are cautioned that plain error "is to be taken with the utmost caution, under exceptional circumstances, and only to prevent a manifest miscarriage of justice." *State v. Long*, 53 Ohio St.2d 91 (1978), paragraph three of the syllabus.

{¶21} R.C. 2907.09(A) relevantly provides as follows:

No person shall recklessly do any of the following, under circumstances in which the person's conduct is likely to be viewed by and affront others who are in the person's physical proximity and who are not members of the person's household:

(1) Expose the person's private parts; [or]

(2) Engage in sexual conduct or masturbation.

R.C. 2907.09(C)(2) provides that a violation of R.C. 2907.09(A)(1) is a misdemeanor of the fourth degree, unless certain aggravating circumstances are present, which elevates the level of the offense. Conversely, R.C. 2907.09(C)(3) states that a violation of R.C. 2907.09(A)(2) is a misdemeanor of the third degree, unless certain aggravating circumstances are present, which increases the level of the offense.

{¶22} Because R.C. 2907.09 provides for different level offenses, this matter implicates R.C. 2945.75(A)(2), which provides as follows:

When the presence of one or more additional elements makes an offense one of more serious degree:

* * *

A guilty verdict shall state either the degree of the offense of which the offender is found guilty, or that such additional element or elements are present. Otherwise, a guilty verdict constitutes a finding of guilt of the least degree of the offense charged.

The application of this statute has engendered much controversy since the Supreme Court of Ohio has issued two decisions, *State v. Pelfrey*, 112 Ohio St.3d 422, 2007-Ohio-256, and *State v. McDonald*, 137 Ohio St.3d 517, 2013-Ohio-5042, indicating that verdict forms must strictly comply with R.C. 2945.75(A)(2) and one decision, *Eafford*, indicating that there are some circumstances when strict compliance is unnecessary. *See State v. Kilbane*, 8th Dist. Cuyahoga No. 99485, 2014-Ohio-1228, ¶ 17 (stating that "while *Pelfrey* is the seminal case on the application of R.C. 2945.75(A)(2), the Ohio Supreme Court has subsequently provided us with

conflicting guidance on this statute"); *State v. Kline*, 3d Dist. Union No. 14-12-09, 2013-Ohio-2387, ¶ 94 (noting that "*Pelfrey* and *Eafford* apparently contradict each other"). But, we need not travail over this controversy to resolve this matter since the Ohio Supreme Court's decision in *Eafford* is directly on-point and controls here.

**{¶23}** In *Eafford*, the defendant was indicted on possession of "'cocaine or a compound * * * in an amount of less than 5 grams' in violation of R.C. 2925.11(A)." *Eafford*, 132 Ohio St.3d 159, 2012-Ohio-2224, at ¶ 4. R.C. 2925.11(A) states that "[n]o person shall knowingly obtain, possess, or use a controlled substance" and it provides for separate offenses based on the type of controlled substance. R.C. 2925.11(C)(2) provides that the offense of "possession of drugs" occurs when the controlled substance is in schedule III, IV, or V, and it is a misdemeanor of the first degree unless other elevating circumstances are present, such as the offender's previous convictions or the amount of drugs involved. R.C. 2925.11(C)(2)(a)-(d). Meanwhile, R.C. 2925.11(C)(4) applies to the possession of cocaine and under R.C. 2925.11(C)(4)(a), the offense is a felony of the fifth degree.

**{¶24}** The jury's verdict form, which neither the State nor the defendant objected to, indicated that the jury found the defendant "guilty of Possession of Drugs in violation of [R.C.] 2925.11(A), as charged in Count Two of the indictment.'" (Emphasis deleted.) *Eafford* at ¶ 6. At the sentencing hearing, the parties all agreed that the defendant was convicted of a fifth-degree felony and the defendant was sentenced accordingly. On appeal, the Eighth District vacated the defendant's sentence for a fifth-degree felony, reasoning that R.C. 2945.75(A)(2) required the defendant's conviction to be for a first degree misdemeanor because the verdict form did not include the degree of offense or the presence of an elevating circumstance.

{¶25} The Supreme Court of Ohio reversed the Eighth District and reinstated the trial court's sentence. Since there was no objection to the verdict form, the Court applied plain error analysis and considered the whole record. In its consideration of the record, the Court noted that (1) the indictment referred to the possession of cocaine; (2) the evidence offered at trial only related to the possession of cocaine; and (3) the jury instructions required the jurors to only find the defendant guilty if it found that the substance involved was cocaine. *Id*. at ¶ 17. Based on these circumstances, the Court determined that the defendant failed to demonstrate plain error. *Id*. at ¶ 18.

{¶26} Although the subject matter of the charges in *Eafford* and this case differ, the circumstances are nearly identical. Like the defendant in *Eafford*, Henry did not object to the verdict form regarding his conviction for public indecency, which necessitates the demonstration of plain error. And, like the defendant in *Eafford*, Henry cannot make such a showing. The amended complaint stated that Henry was charged with violating R.C. 2907.09(A)(2) and listed the offense as being a "misdemeanor of the 3RD degree." At trial, the evidence offered only related to masturbation and the trial judge instructed that the jury could only find Henry guilty of public indecency if it found that he engaged in masturbation. In light of these circumstances, "[Henry] has not shown but for the use of this verdict form, the outcome of trial would have been different. Had he made a timely objection, the court could have modified the verdict form, but [Henry] still would have been found guilty of [public indecency by masturbation], because the only evidence in the case demonstrated his [masturbation.]" *Id*. at ¶ 19. As a result, Henry has not shown plain error in the use of the jury form for public indecency and we must let his conviction for public indecency in violation of R.C. 2907.09(A)(2) as a third degree misdemeanor stand.

**{¶27}** Accordingly, we overrule Henry's fourth assignment of error.

### Assignment of Error VI

**The trial court committed reversible and plain error when it ordered Mr. Henry to have "no contact" with all Metro Parks.**

**{¶28}** In his sixth assignment of error, Henry contends that the trial court erred by ordering him to have no contact with all Metro Parks, which he likens to a banishment. Henry asserts that the no-contact order violates his constitutionally-protected right of travel and exceeds the authority of the trial court. We disagree on both points.

### A. Standard of Review

**{¶29}** We review the trial court's misdemeanor sentence for an abuse of discretion. *State v. Endress*, 9th Dist. Medina No. 08CA0011-M, 2008-Ohio-4498, ¶ 3. An abuse of discretion implies that the court's decision is arbitrary, unreasonable, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983). When applying this standard, a reviewing court is precluded from simply substituting its own judgment for that of the trial court. *Pons v. Ohio State Med. Bd.*, 66 Ohio St.3d 619, 621 (1993).

### B. Right of Travel

**{¶30}** To support his position that the no-contact order violated his right of travel, Henry cites to *State v. Burnett*, 93 Ohio St.3d 419 (2001). There, the Supreme Court of Ohio struck down a city ordinance banning all individuals convicted of drug offenses from public streets, sidewalks, and other public ways within high crime areas. In doing so, the Court recognized that Ohioans have "a constitutional right of travel within a state[,]" *id*. at 426, and it reasoned that the ordinance trampled upon that right since it was not "narrowly tailored" to the compelling interest of preventing illegal drug activity, *id*. at 431.

**{¶31}** Henry's reliance on *Burnett* is misplaced since the ordinance implicated there is significantly different from the no-contact order issued in this matter. Unlike the ordinance in *Burnett*, the no-contact order does not trample upon Henry's ability to travel within the State as it does not cover any public streets, sidewalks, or other public ways. Moreover, the no-contact order is narrowly tailored to the incident that gave rise to Henry's public indecency conviction since it bars Henry from returning to the same type of parks where he engaged in the conduct that produced his conviction. Due to these critical differences between *Burnett* and this matter, we conclude that the no-contact order precluding Henry from the Metro Parks does not violate his right of travel.

### C. Trial Court's Authority to Issue No-Contact Order

**{¶32}** "R.C. 2929.25 controls misdemeanor community control sanctions[.]" *State v. Walton*, 9th Dist. Lorain No. 09CA009588, 2009-Ohio-6703, ¶ 18. R.C. 2929.25(A)(1)(b) authorizes courts to "[i]mpose a jail term under section 2929.24 of the Revised Code from the range of jail terms authorized under that section for the offense, suspend all or a portion of the jail term imposed, and place the offender under a community control sanction or a combination of community control sanctions authorized under section 2929.26, 2929.27, and 2929.28 of the Revised Code." *See also State v. Pope*, 9th Dist. Medina No. 13CA0031-M, 2014-Ohio-2864, ¶ 11 ("[Because portion of sentence was suspended], the trial court was authorized pursuant to R.C. 2929.25(A)(1)(b) to impose community control sanctions."). The nonresidential sanctions authorized under R.C. 2929.27 are applicable here. *See id.* at ¶ 12 (noting that "[c]ommunity control sanctions can be * * * nonresidential under R.C. 2929.27"). R.C. 2929.27(A) contains a non-exhaustive list of nonresidential community control sanctions. *See State v. Anderson*, 138 Ohio St.3d 264, 2014-Ohio-542, ¶ 45 ("The statutory phrase, 'including, but not limited to,'

means that the examples expressly given are 'a *non[-]exhaustive* list of examples.'") (Emphasis sic.), quoting *State v. Muncie*, 91 Ohio St.3d 440, 448 (2001). And, although R.C. 2929.27(A) does not expressly list a no-contact order, "Ohio courts have recognized that a no-contact order is a community [] control sanction." *State v. Anderson*, 143 Ohio St.3d 173, 2015-Ohio-2089, ¶ 17 (collecting cases). As a result, under these provisions, the trial court was authorized to suspend a portion of Henry's jail term for his public indecency conviction on the condition that he comply with a no-contact order.

{¶33} Based on our decision in *Akron v. Bilder*, 9th Dist. Summit No. 14309, 1990 WL 67050 (May 16, 1990), we conclude that the trial court was authorized to make its no-contact order cover all Metro Parks. In *Bilder*, the defendant was convicted of public indecency after he was seen in a Summit County courthouse with his genitals exposed. The trial court suspended the defendant's 30-day jail term on the condition that he not enter the courthouse or other public buildings in Summit County unless on official business. On appeal, this Court affirmed the imposition of this condition on the defendant's suspended jail term. In doing so, we relied on a similar statute to R.C. 2929.24(A)(1)(b)[2] and concluded that "such [a] restriction is properly within the court's discretion." *Id*. at *1.

{¶34} Here, Henry was seen in a Metro Park masturbating, and like the defendant in *Bilder*, he was convicted of public indecency. A portion of Henry's jail term was subsequently suspended on the condition that he not have any contact with any Metro Park, which is markedly similar to the suspended jail term in *Bilder* that precluded the defendant from entering any public

---

[2] The statute involved in *Bilder*, former R.C. 2929.51(D)(2), provided that "[a]t the time of sentencing and after sentencing, when imprisonment for misdemeanor is imposed, the court may * * * suspend the sentence * * * upon any terms that the court considers appropriate[.]" This statute has seen been repealed, but it has the same import as R.C. 2929.24(A)(1)(b).

building in Summit County, including the courtroom where the public indecency occurred. Due to these indistinguishable circumstances, we are compelled to follow *Bilder* here and determine that the trial court did not abuse its discretion by issuing the no-contact order for "all Metro Parks." *See also State v. Jacobs*, 189 Ohio App.3d 283, 2010-Ohio-4010, ¶ 8 (8th Dist.) (noting that provision for nonresidential community control sanctions in felony cases authorized trial court to ban the defendant from a mall). In finding guidance from *Bilder*, we reject the authority cited by Henry as distinguishable. *Compare State v. Mose*, 9th Dist. Medina No. 11CA0083-M, 2013-Ohio-635, ¶ 15 (determining that lifetime banishment from Ohio as condition of post-release control was contrary to law); *Jacobs* at ¶ 8 (vacating lifetime ban from mall only because trial court was precluded from imposing a community control sanction that exceeded five years); *State v. Bilder*, 39 Ohio App.3d 135, 135 (9th Dist.1987) (determining that banishment from public building as part of the defendant's sentence in addition to entirely unsuspended jail term was contrary to law).

**{¶35}** We also reject Henry's argument to the extent that he contends the trial court erred in issuing a purportedly indefinite no contact order. R.C. 2929.15(A)(1) states that the duration of community control sanctions "shall not exceed five years." As a result, the trial court was only authorized to issue a no contact order that did not exceed five years. After a review of the record, we conclude that the trial court did not violate this limitation. The trial court stated both at the sentencing hearing and in its judgment entry of conviction and sentence that Henry was required to serve a one-year term of community control sanctions. As a result, the record reflects that the trial court properly issued a one-year no contact order for the Metro Parks, which falls squarely within R.C. 2929.15(A)(1)'s five-year limit.

**{¶36}** Accordingly, we overrule Henry's sixth assignment of error.

**Assignment of Error V**

**Mr. Henry was denied his constitutional right to effective assistance of counsel at trial when his trial counsel failed to argue that the trial court should have sentenced Mr. Henry for public indecency as a fourth degree misdemeanor.**

**Assignment of Error VII**

**Mr. Henry was denied his constitutional right to effective assistance of counsel at trial when his trial counsel failed to argue that the trial court's order of having "no contact" with all Metro Parks was unlawful.**

{¶37} In his fifth assignment of error, Henry argues that he received ineffective assistance of counsel because his trial counsel did not object to the verdict form used by the jury for his public indecency conviction. In his seventh assignment of error, Henry contends that he received ineffective assistance because his trial counsel did not object to the no-contact order for all Metro Parks. We disagree on both points.

{¶38} To establish ineffective assistance of counsel, a defendant must show that his trial counsel's performance was deficient and that the deficient performance affected the outcome of trial. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). As discussed in our resolution of Henry's fourth assignment of error, any deficiencies in the verdict form for his public indecency conviction did not affect the outcome of trial. Consequently, assuming, without deciding, that his trial counsel's performance was deficient for failing to object to the verdict form, Henry cannot show that that performance affected the outcome of trial. *See State v. Roberts*, 9th Dist. Wayne No. 14AP0035, 2015-Ohio-5044, ¶ 23 ("[The defendant] has failed to satisfy the second prong of the *Strickland* test and has not shown that she received ineffective assistance of counsel.").

{¶39} Further, as discussed in our resolution of the sixth assignment of error, the trial court did not abuse its discretion by issuing the no-contact order for all Metro Parks. Thus, we

cannot determine that the performance of Henry's trial counsel was deficient for failing to object to the no-contact order. *See State v. Price*, 9th Dist. Medina No. 14CA0070-M, 2015-Ohio-5043, ¶ 34 (determining that trial counsel's performance was not deficient for failure to object because "maintaining the objection would have been futile"). Accordingly, Henry cannot demonstrate that he received ineffective assistance of counsel and we must overrule his fifth and seventh assignments of error.

## Assignment of Error VIII

**The cumulative effect of the trial court's errors denied Mr. Henry a fair trial.**

{¶40} In his eighth assignment of error, Henry argues that his convictions are subject to reversal under the cumulative error doctrine. We disagree.

{¶41} We have defined the cumulative error doctrine as allowing the reversal of a conviction "when the cumulative effect of errors deprives a defendant of the constitutional right to a fair trial even though none of the errors, in isolation, was prejudicial." *State v. Boone*, 9th Dist. Summit No. 26104, 2013-Ohio-2664, ¶ 38, citing *State v. DeMarco*, 31 Ohio St.3d 191 (1987), paragraph two of the syllabus. However, if there are not multiple errors in the trial court's proceedings, then the cumulative error doctrine cannot apply. *See State v. Hunter*, 131 Ohio St.3d 67, 2011-Ohio-6524, ¶ 132 ("But the doctrine of cumulative error is not applicable to the present case, because there were no multiple errors."). As indicated in our resolution of the previous assignments of error, Henry has not identified a single instance of error. Thus, the cumulative error doctrine does not apply here and does not support the reversal of Henry's conviction.

{¶42} Accordingly, we overrule Henry's eighth assignment of error.

III.

{¶43} Having overruled all of Henry's assignments of error, we affirm the judgment of the Akron Municipal Court.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Akron Municipal Court, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

JULIE A. SCHAFER
FOR THE COURT

CARR, P. J.
WHITMORE, J.
CONCUR.

APPEARANCES:

NEIL AGARWAL, Attorney at Law, for Appellant.

EVE V. BELFANCE, Law Director, and GERTRUDE WILMS, Prosecuting Attorney, and THOMAS D. BOWN, Assistant Prosecuting Attorney, for Appellee.