[Cite as *State v. Wheelock*, 2024-Ohio-1913.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF MEDINA | ) | |

| STATE OF OHIO | C.A. No. 2023CA0055-M |
|---|---|
| Appellee | |
| v. | APPEAL FROM JUDGMENT ENTERED IN THE |
| ZACK K. WHEELOCK | COURT OF COMMON PLEAS COUNTY OF MEDINA, OHIO |
| Appellant | CASE No. 2022 CR 0867 |

DECISION AND JOURNAL ENTRY

Dated: May 20, 2024

SUTTON, Presiding Judge.

{¶1} Defendant-Appellant Zack Wheelock appeals from the judgment of the Medina County Court of Common Pleas. This Court affirms.

I.

{¶2} Zack Wheelock was indicted by a Medina County grand jury on one count of sexual battery in violation of R.C. 2907.03(A)(2).

{¶3} The indictment stemmed from an incident that occurred in the early morning hours of October 12, 2022. The victim in this case, B.P., testified at trial that the day before, on October 11, 2022, she had lunch with a friend who mentioned Mr. Wheelock to her. While at lunch, B.P. accepted a Facebook friend request from Mr. Wheelock and the two began exchanging messages.

{¶4} B.P. and her friend, K.M. both consumed alcoholic beverages while at lunch. After lunch, both B.P. and K.M. acquired more alcoholic beverages for the two of them to consume and went to K.M.'s home. B.P. testified they spent the rest of the afternoon and evening at K.M.'s

home drinking and taking provocative pictures of themselves while scantily clad, both individually and together.

{¶5}     Throughout the day, B.P. continued to exchange messages with Mr. Wheelock. B.P. testified that when the conversation with Mr. Wheelock and the pictures from Mr. Wheelock became sexually explicit, K.M. had taken B.P.'s phone and was responding to the messages. B.P. testified K.M. previously had a romantic relationship with Mr. Wheelock. At trial, K.M. denied previously having a romantic relationship with Mr. Wheelock but admitted that she did take B.P.'s phone and sent a picture of Mr. Wheelock's penis to her fiancé, A.F., from B.P.'s phone.

{¶6}     At about midnight, Mr. Wheelock finished working and messaged B.P. that he was coming over to K.M.'s home that K.M. shared with her fiancé. The four adults continued drinking together and  smoked marijuana. B.P. testified that after smoking the marijuana, she became very nauseous and went outside to vomit. While she was vomiting, Mr. Wheelock was holding her hair back but also touching her. She testified she repeatedly told Mr. Wheelock to stop touching her. After she vomited outside, she went back inside the house to try and fall asleep on the couch. When she fell asleep, she was on one side of an L-shaped couch, and Mr. Wheelock was on the other side.

{¶7}     B.P. testified that after she passed out, the next thing she remembered was waking up to the feeling of Mr. Wheelock on top of her with his penis inside of her, and then Mr. Wheelock ejaculating on her thigh. She said she became terrified, grabbed her pants, and put them on. She shoved her underwear into her pocket and ran upstairs to the bedroom that K.M. and her fiancé shared. Mr. Wheelock followed her upstairs but did not enter the bedroom. Both K.M. and her fiancé spoke with Mr. Wheelock and then Mr. Wheelock eventually left the home.

{¶8} B.P. called a friend, A.M., to come pick her up from K.M.'s home because she was still too drunk to drive. A.M. did not live in Medina and it took her about 35-40 minutes to arrive at K.M.'s home. At trial, A.M. testified when she picked B.P. up, B.P. told her that she had been sexually assaulted. A.M. asked B.P. if she wanted to go to the police, B.P. said she did, so A.M. drove her to the Medina Police Department. There, officers took a report and sent B.P. to the hospital to have a rape kit done. Results from tests conducted on DNA collected in the rape kit matched a sample taken from Mr. Wheelock.

{¶9} Detective Fitz of the Medina Police Department testified that he spoke with Mr. Wheelock the afternoon of the incident. Mr. Wheelock told the detective he had been flirting with the victim all night and corroborated B.P.'s account of throwing up outside. The detective testified Mr. Wheelock stated B.P. took off her pants and underwear while they were laying on the couch together "and then [Mr. Wheelock] said as he was getting ready to insert his penis into [B.P.]'s vagina, she kind of started to fall off the couch and kind of go unconscious, so he stopped what he was doing. [Mr. Wheelock] said at that point he had started to, what he referred to as, pre-cum or ejaculate." When asked whether Mr. Wheelock admitted to inserting his penis into B.P.'s vagina, Detective Fitz clarified that "[w]hat Mr. Wheelock had told me was that he had inserted just the head of his penis into her vagina, and that's when she started to kind of go unconscious and fall off the couch[.]"

{¶10} Detective Fitz also testified Mr. Wheelock said he knew B.P. and K.M. had been "heavily drinking," and Mr. Wheelock said he saw B.P. consume alcohol after he arrived at K.M.'s house. Mr. Wheelock also indicated to the detective that he believed B.P. was impaired. Detective Fitz testified: "I asked [Mr. Wheelock] numerous times, you know, what made him feel that [B.P.] was impaired, and he had mentioned it was just the way that she was acting, and then the fact that

she had thrown up, but he attributed the vomiting to their drinking alcohol then smoking marijuana."

{¶11} The jury returned a verdict of guilty on the sole count of sexual battery in the indictment. The trial court sentenced Mr. Wheelock to 18 months in prison. Mr. Wheelock timely appealed, assigning four errors for this Court's review, numbered one, three, four, and five.

II.

**ASSIGNMENT OF ERROR I**

**THE TRIAL COURT COMMITTED REVERSIBLE ERROR WHEN IT ALLOWED [EVIDENCE]TO BE INTRODUCED AS EXHIBITS, AS EXHIBIT 2, A RAPE SHIELD KIT[,] AND AS EXHIBIT 6, THE BCI RESULTS OF THE RAPE SHIELD EVALUATION, WHEN THERE WAS NOT PROPER FOUNDATION FOR EITHER OF THE EXHIBITS TO BE INTRODUCED OVER DEFENSE OBJECTION TO BOTH.**

{¶12} In his first assignment of error, Mr. Wheelock argues the trial court committed reversible error when it admitted Exhibits 2 and 6 into evidence because the State failed to lay the proper foundation for the admission of those exhibits. For the following reasons, we disagree.

{¶13} A trial court possesses broad discretion with respect to the admission of evidence. *State v. Meyers*, 9th Dist. Summit Nos. 23864, 23903, 2008-Ohio-2528, ¶ 48, citing *State v. Maurer*, 15 Ohio St.3d 239 (1984). An appellate court will not disturb evidentiary rulings absent an abuse of discretion. *Id*., citing *State v. Roberts*, 156 Ohio App.3d 352, 2004-Ohio-962 (9th Dist.).

{¶14} However, "[w]hen a defendant fails to contemporaneously object to the testimony, identification, and publication [items of evidence] introduced as exhibits to the jury, and only later objects, after the close of the State's evidence when the [items] are being admitted into evidence, [he] forfeits the matter for review on appeal." *State v. Watkins*, 9th Dist. Summit No. 30430, 2023-Ohio-2757, ¶ 20, citing *State v. Henry*, 9th Dist. Summit No. 27758, 2016-Ohio-680, ¶ 10. A

review of the record shows that Mr. Wheelock failed to contemporaneously object to the testimony pertaining to the exhibits and only later objected when the State moved to admit them into evidence. Thus, Mr. Wheelock's argument is only subject to plain error review. *Id.* This Court will not sua sponte undertake a plain-error analysis if the defendant fails to do so. *See State v. Carter*, 9th Dist. Summit No. 30332, 2023-Ohio-3452, ¶ 19; *State v. Krowiak*, 9th Dist. Medina No. 21CA0003-M, 2022-Ohio-413, ¶ 37; *State v. McCraw*, 9th Dist. Medina No. 14CA0009-M, 2015-Ohio-3809, ¶ 5; *State v. Hairston,* 9th Dist. Lorain No. 05CA008768, 2006-Ohio-4925, ¶ 9. Mr. Wheelock has not made a plain error argument on appeal. Accordingly, this Court will not make one on his behalf.

{¶15} Mr. Wheelock's first assignment of error is overruled.

### ASSIGNMENT OF ERROR III

**[MR.] WHEELOCK'S CONVICTION WAS BASED ON INSUFFICIENT EVIDENCE AS A MATTER OF LAW.**

{¶16} In his third assignment of error, Mr. Wheelock argues the State presented insufficient evidence because the State failed to prove Mr. Wheelock knew that the victim's "ability to appraise the nature of or control the other person's own conduct is substantially impaired" as required by R.C. 2907.03(A)(2). For the following reasons, we disagree.

{¶17} "Whether a conviction is supported by sufficient evidence is a question of law that this Court reviews de novo." *State v. Williams*, 9th Dist. Summit No. 24731, 2009-Ohio-6955, ¶ 18, citing *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997). The relevant inquiry is whether the prosecution has met its burden of production by presenting sufficient evidence to sustain a conviction. *Thompkins* at 390 (Cook, J., concurring). For purposes of a sufficiency analysis, this Court must view the evidence in the light most favorable to the State. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). We do not evaluate credibility, and we make all reasonable inferences in

favor of the State. *State v. Jenks*, 61 Ohio St.3d 259, 273 (1991). The evidence is sufficient if it allows the trier of fact to reasonably conclude that the essential elements of the crime were proven beyond a reasonable doubt. *Id.*

{¶18} R.C. 2907.03 (A)(2) states as follows:

(A) No person shall engage in sexual conduct with another, not the spouse of the offender, when any of the following apply:

(2) The offender knows that the other person's ability to appraise the nature of or control the other person's own conduct is substantially impaired.

{¶19} The State presented sufficient evidence to sustain the conviction through the testimony of the victim, B.P., and Detective Fitz. B.P.'s testimony established Mr. Wheelock engaged in sexual conduct with her by inserting his penis into her vagina and ejaculating on her leg. B.P. testified she was substantially impaired due to the amount of alcohol and drugs she consumed that evening, she consumed both alcohol and marijuana in front of Mr. Wheelock and became sick in front of Mr. Wheelock. B.P. testified that she went outside and was on her hands and knees vomiting in the yard and Mr. Wheelock followed her outside and witnessed her become sick. She also testified that when she went back into the house, before she passed out, she told Mr. Wheelock that she needed to go to sleep because she did not feel well.

{¶20} Additionally, Detective Fitz testified that Mr. Wheelock admitted he had inserted his penis into B.P.'s vagina. The detective also testified Mr. Wheelock told him that he believed B.P. was impaired from drinking alcohol and smoking marijuana.

{¶21} Construing B.P. and Detective Fitz's testimony in a light most favorable to the State, the State presented sufficient evidence to sustain a conviction for sexual battery.

{¶22} Mr. Wheelock's third assignment of error is overruled.

## ASSIGNMENT OF ERROR IV

**[MR.] WHEELOCK'S CONVICTION WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.**

**{¶23}** In his fourth assignment of error, Mr. Wheelock argues that the jury verdict was against the manifest weight of the evidence on the grounds that one of the witnesses presented evidence that the victim was flirting with Mr. Wheelock and was not intoxicated. For the following reasons, we disagree,

**{¶24}** As the Supreme Court of Ohio has stated:

> [i]n determining whether a criminal conviction is against the manifest weight of the evidence an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *State v. Otten*, 33 Ohio App.3d 339, 340 (9th Dist.1986). "When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a 'thirteenth juror' and disagrees with the factfinder's resolution of the conflicting testimony."

*Thompkins*, 78 Ohio St.3d at 387, quoting *Tibbs v. Florida*, 457 U.S. 31, 42 (1982).

**{¶25}** Here, without citation to the record, Mr. Wheelock argues that the jury's verdict was against the manifest weight because one of the witnesses, K.M., offered testimony that the victim was flirting with Mr. Wheelock and the victim was not intoxicated. As stated above, the State presented the victim's testimony and the testimony of Detective Fitz which contradicted the testimony of K.M. "This Court will not overturn a conviction on a manifest weight challenge only because the [trier of fact] found the testimony of certain witnesses to be credible." *State v. Gannon*, 9th Dist. Medina No. 19CA0053-M, 2020-Ohio-3075, ¶ 20. "[T]he jury is best able to view witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony." *State v. Cook*, 9th Dist.

Summit No. 21185, 2003-Ohio-727, ¶ 30, quoting *Giurbino v. Giurbino*, 89 Ohio App.3d 646, 659 (8th Dist.1993).

**{¶26}** Based upon this record, this case is not an exceptional case that warrants reversal. This Court has repeatedly held that the jury is tasked with determining the credibility of witness testimony and evidence in reaching its verdict. As such, the jury did not clearly lose its way and create such a manifest miscarriage of justice that Mr. Wheelock's conviction must be reversed and a new trial ordered.

**{¶27}** Mr. Wheelock's fourth assignment of error is overruled.

### ASSIGNMENT OF ERROR V

**THE TRIAL COURT ERRED WHEN IT SENTENCED DEFENDANT TO [A] PRISON TERM.**

**{¶28}** In his fifth assignment of error, Mr. Wheelock argues the trial court erred in sentencing him to a prison term. For the following reasons, we disagree.

**{¶29}** As this Court stated in *State v. Hensley*, 9th Dist. Lorain Nos. 22CA011872, 22CA011920, 2023-Ohio-2910, ¶ 17-18, 19:

> The Supreme Court has held that an appellate court may vacate or modify a felony sentence on appeal only if it determines by clear and convincing evidence that the record does not support the trial court's findings under relevant statutes or that the sentence is otherwise contrary to law. Clear and convincing evidence is that measure or degree of proof which will produce in the mind of the trier of facts a firm belief or conviction as to the allegations sought to be established.
>
> Trial courts may impose a prison sentence within the statutory range and are not required to make findings or give their reasons for imposing more than the minimum sentences. Nevertheless, the court must carefully consider the statutes that apply to every felony case, including R.C. 2929.11, which specifies the purposes of sentencing, and R.C. 2929.12, which provides guidance in considering factors relating to the seriousness of the offense and recidivism of the offender.
>
> Unless the record shows that a court failed to consider the factors, or that the sentence is strikingly inconsistent with the factors, the court is presumed to have considered the statutory factors if the sentence is within the statutory range.

(Internal quotations and citations omitted.)

**{¶30}** Here, the sentencing entry states:

The [c]ourt has considered the record, oral statements, and any victim impact statement, as well as the principles and purposes of sentencing under Ohio Revised Code Section 2929.11.

**{¶31}** Additionally, the trial court stated at the sentencing hearing:

So considering all the factors the [c]ourt is required to consider under the statutes and the comments here this morning, the [c]ourt does feel, based on the jury verdict and the facts that came out at trial, that a prison sentence is warranted.

**{¶32}** While the trial court did not explicitly reference R.C. 2929.12 in the entry or at the hearing, there is evidence in the record that it did consider the factors in the statute. After Mr. Wheelock addressed the trial court, and before the trial court announced the sentence, the trial court asked Mr. Wheelock: "So, Mr. Wheelock, in all your comments, you focused on the effects that this had on you. What about the victim?" The physical, psychological, and economic harm suffered by the victim is a relevant statutory factor under R.C. 2929.12(B)(2) and is indication the trial court considered the relevant factors.

**{¶33}** After reviewing the record, there is no indication, much less by clear and convincing evidence, that the trial court failed to consider the relevant statutory factors or that the sentence was unsupported by the evidence.

**{¶34}** Mr. Wheelock's fifth assignment of error is overruled.

III.

**{¶35}** Mr. Wheelock's four assignments of error are overruled. The judgment of the Medina County Court of Common Pleas is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Medina, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

 

 

BETTY SUTTON
FOR THE COURT


CARR, J.
HENSAL, J.
CONCUR.


APPEARANCES:

WESLEY A. JOHNSTON, Attorney at Law, for Appellant.

S. FORREST THOMPSON, Prosecuting Attorney, and STEFANIE H. ZARANEC, Assistant Prosecuting Attorney, for Appellee.