[Cite as *State v. Zink*, 2023-Ohio-1250.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF LORAIN | ) | |

| STATE OF OHIO | | C.A. No.     21CA011813 |
|---|---|---|
| Appellee | | |
| v. | | APPEAL FROM JUDGMENT ENTERED IN THE |
| STEVEN ZINK | | COURT OF COMMON PLEAS COUNTY OF LORAIN, OHIO |
| Appellant | | CASE No.     19CR101802 |

DECISION AND JOURNAL ENTRY

Dated: April 17, 2023

HENSAL, Presiding Judge.

**{¶1}** Steven Zink appeals a judgment of the Lorain County Court of Common Pleas that convicted and sentenced him for one count of felonious assault. For the following reasons, this Court affirms.

I.

**{¶2}** Mr. Zink worked as a bouncer at a bar in Lorain. One evening, S.S. was at the bar with his wife and another couple for dancing. When the disc jockey began playing music S.S. did not like and refused to play his requested songs, S.S. gave him a thumbs down gesture. The disc jockey walked over to S.S.'s table, got into a verbal confrontation with him, and continued giving the group dirty looks after returning to his station. According to S.S., the couples decided to leave the bar shortly thereafter, but, when he got up, Mr. Zink was standing there. Mr. Zink told S.S. that he had to leave and began pushing him down the hallway, even as S.S. repeatedly told Mr. Zink that they were leaving. S.S. testified that Mr. Zink pushed him all the way to the entrance of

the bar, including off a small flight of stairs. After being pushed down the stairs, his wife attempted to intervene, but Mr. Zink threw her aside. When S.S. objected, Mr. Zink punched him in the face, knocking him unconscious and causing him to fall onto the ground outside the bar.

{¶3} The Grand Jury indicted Mr. Zink for felonious assault against S.S. and assault against S.S.'s wife. At trial, Mr. Zink testified that he did not forcefully push S.S. to the door of the bar, but only stood behind him and made a sweeping motion with his hand, indicating that S.S. had to leave. When they reached the door of the bar, S.S. suddenly struck him in the face, causing him to react with a punch. A jury found Mr. Zink guilty of the felonious assault charge but not guilty of the assault charge. The trial court sentenced him to three years of community control, including 90 days in jail. Mr. Zink has appealed, assigning three errors.

II.

ASSIGNMENT OF ERROR I

THE TRIAL COURT COMMITTED REVERSIBLE ERROR BY COMMENTING ON THE EVIDENCE IN VIOLATION OF APPELLANT'S RIGHT TO A FAIR TRIAL UNDER THE FIFTH, SIXTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION, AND ARTICLE ONE, SECTION 10 OF THE OHIO STATE CONSTITUTION.

{¶4} In his first assignment of error, Mr. Zink argues that the trial court improperly commented on the evidence, in violation of his right to a fair trial. Recognizing that juries are "highly sensitive to every utterance by the trial judge," the Ohio Supreme Court has determined that improper remarks by a trial judge may prejudice a defendant's right to a fair trial and representation by counsel. *State v. Wade*, 53 Ohio St.2d 182, 188 (1978), quoting *State v. Thomas*, 36 Ohio St.2d 68, 71 (1973).

> Generally, in determining whether a trial judge's remarks were prejudicial, the courts will adhere to the following rules: (1) The burden of proof is placed upon the defendant to demonstrate prejudice, (2) it is presumed that the trial judge is in the best position to decide when a breach is committed and what corrective

measures are called for, (3) the remarks are to be considered in light of the circumstances under which they are made, (4) consideration is to be given to their possible effect upon the jury, and (5) to their possible impairment of the effectiveness of counsel.

*Id.*

{¶5}     During cross-examination of S.S., Mr. Zink's counsel asked S.S. about his medical records from the night of the incident.  One of the things counsel asked about was whether the records indicated that S.S. had "[a]cute alcohol intoxication."  S.S. agreed that the records stated so.  Summarizing S.S.'s diagnosis from the records, Mr. Zink's counsel asserted that S.S. had a severe concussion and was highly intoxicated.  After S.S. disagreed, because the records only indicated "acute" alcohol intoxication, the State objected, noting that S.S. was not an expert who had knowledge of the meaning of that phrase.  The court interjected that the term "acute" does not suggest that a condition is severe, only that it is current, and contrasted it with a chronic condition.  Mr. Zink's counsel objected to the court explaining a term in front of the jury.  Following a discussion at sidebar, the court concluded that a mistrial was not warranted.

{¶6}     Overnight, Mr. Zink's counsel uncovered a European medical journal that defined acute alcohol intoxication as having a blood-alcohol content of more than .08.  After noting that S.S.'s medical records indicated that his blood alcohol content had been .085, the court offered to provide a curative instruction to the jury.  Mr. Zink's counsel stated that he did not object to a curative instruction and suggested that the court refer the jury to the page of the medical records with the blood-alcohol content measurement.  Once the jury was seated, the court stated:

> [T]here was a time during the cross-examination of [S.S] where [a] phrase * * * in the medical records referred to acute intoxication.  And to give context to that, I had counsel check the medical records, and they have stipulated as to what the blood alcohol content was of [S.S.] at the hospital so that then you can conclude[ ] his level of intoxication, and have context [as] to what acute intoxication meant at that time.

> The legal standard for intoxication is .08. If you test .08 you're not supposed to be driving, and at page 53 of the medical records, the level was .085. So it was over the legal limit. That's what his level of intoxication was.
>
> So, you can figure out from there I guess how many beers or whatever it was that led to that level of blood alcohol. And that's been stipulated to by both sides so hopefully that clears up any confusion[.]

Mr. Zink did not object to the content of the curative instruction.

**{¶7}** Upon consideration of the *Wade* factors, we conclude that Mr. Zink has not established that he was prejudiced by the court's statements about the definition of "acute." Mr. Zink correctly notes that S.S.'s level of intoxication was a factor that could have affected his ability to remember the incident and, consequently, influenced his credibility to the jury. Whether S.S.'s blood alcohol content qualified as "high" or "acute," however, was not as important as providing the jury with context about how inebriated S.S. was at the time of the incident. The court's curative instruction clarified that S.S.'s blood-alcohol content at the hospital was .085, which it noted was above the legal limit to operate a motor vehicle. It also explained that that was the context under which the hospital staff diagnosed S.S. as having acute alcohol intoxication. A jury is presumed to follow curative instructions given to it by a trial judge. *State v. Garner*, 74 Ohio St.3d 49, 59 (1995). In light of the court's instruction, combined with S.S.'s acknowledgement that he "had a buzz" at the time of the incident, we conclude that the trial court's initial statements that an acute condition is not "severe" and contrasting an acute condition from a chronic one did not violate Mr. Zink's right to a fair trial. Mr. Zink's first assignment of error is overruled.

ASSIGNMENT OF ERROR II

THE VERDICT IN THIS CASE IS AGAINST THE SUFFICIENCY OF THE
EVIDENCE AND SHOULD BE REVERSED BECAUSE IT VIOLATES THE
FIFTH, SIXTH AND FOURTEENTH AMENDMENTS TO THE UNITED
STATES CONSTITUTION, AND ARTICLE 1, SECTION 10 OF THE
CONSTITUTION OF THE STATE OF OHIO.

{¶8} In his second assignment of error, Mr. Zink argues that his felonious assault conviction is not supported by sufficient evidence. Whether a conviction is supported by sufficient evidence is a question of law, which we review de novo. *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997). In carrying out this review, our "function * * * is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus. "The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *Id*.

{¶9} Mr. Zink argues that the State failed to prove that he did not act in self-defense when he punched S.S. "Self-defense requires that a defendant: (1) was not at fault in creating the situation giving rise to the affray; (2) had a bona fide belief that he was in imminent danger of * * * great bodily harm and that his only means of escape * * * was in the use of such force; and (3) did not violate any duty to * * * avoid the danger." *State v. Warren*, 9th Dist. Summit No. 29455, 2020-Ohio-6990, ¶ 12, citing *State v. Barnes*, 94 Ohio St.3d 21, 24 (2002). "All three of these elements must be present to establish self-defense." *Id*.

{¶10} The Ohio Supreme Court has recently clarified that "a defendant charged with an offense involving the use of force has the burden of producing legally sufficient evidence that the defendant's use of force was in self-defense." *State v. Messenger*, __ Ohio St.3d __, 2022-Ohio-

4562, ¶ 25. If the defendant satisfies that burden, the State then has the "burden of disproving the defendant's self-defense claim beyond a reasonable doubt[.]" *Id*. at ¶ 27. The Ohio Supreme Court has also held that "a manifest-weight-of-the-evidence standard of review applies to the state's burden of persuasion" on the issue of self-defense. *Id*. at ¶26. When considering a challenge to the manifest weight of the evidence, this Court is required to consider the entire record, "weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Otten*, 33 Ohio App.3d 339, 340 (9th Dist.1986). "A reversal on this basis is reserved for the exceptional case in which the evidence weighs heavily against the conviction." *State v. Croghan*, 9th Dist. Summit No. 29290, 2019-Ohio-3970, ¶ 26.

{¶11} Mr. Zink testified that S.S. struck him in the face as he was escorting S.S. from the bar, which is what prompted him to punch S.S. He testified that S.S.'s strike not only left red marks on his face but also bent the glasses he was wearing. Accordingly, there was evidence that tended to support that Mr. Zink acted in self-defense.

{¶12} The State, however, presented evidence that Mr. Zink created the situation that gave rise to the affray and that he did not have a bona fide belief that he was in imminent danger. Contrary to Mr. Zink's testimony, S.S. testified that, after he stood up to leave, Mr. Zink grabbed his shoulders and pushed him into a wall. Mr. Zink then pushed him down a hall, through a doorway, off a landing, and out a door onto the concrete outside. When S.S. asked Mr. Zink what his problem was after Mr. Zink pushed S.S.'s wife, Mr. Zink responded by punching him in the face.

{¶13}   Based on the testimony of S.S., although he got into a verbal confrontation with the disc jockey, Mr. Zink came over after it was over and initiated the physical contact between them. S.S. testified that Mr. Zink kept pushing him down the hallway, even though he had his arms up and was telling Mr. Zink that his group was leaving.  S.S. also testified that Mr. Zink punched him while he was not even facing Mr. Zink.  Upon review of the record, we conclude that the jury's determination that Mr. Zink did not act in self-defense is not against the manifest weight of the evidence.  Mr. Zink's second assignment of error is overruled.

## ASSIGNMENT OF ERROR III

THE CONVICTIONS ARE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE IN VIOLATION OF THE DUE PROCESS CLAUSE OF THE 14TH AMENDMENT TO THE U.S. CONSTITUTION AND OF THE OHIO CONSTITUTION.

{¶14}   In his third assignment of error, Mr. Zink argues that his conviction is against the manifest weight of the evidence.  Mr. Zink argues that he was more credible than S.S., noting that S.S. had been heavily drinking and there was testimony that S.S. was loud and out of control.  He, on the other hand, was working that evening and had not had any alcohol to drink, which was verified by one of his co-workers.

{¶15}   Mr. Zink's co-worker testified that S.S.'s group was loud and drinking heavily, but he did not testify about S.S. specifically.  He testified that it was customary for Mr. Zink not to drink while working, but he was outside part of that evening while Mr. Zink was working inside. He, therefore, did not see Mr. Zink during his entire shift and did not see the incident.

{¶16}   S.S.'s version of the events was supported by his wife, who saw Mr. Zink push S.S. into a wall and down the hallway.  According to S.S.'s wife, she ran up the stairs and into the bar after Mr. Zink pushed her aside so she did not see the punch.  The wife of the other couple that was with S.S. that evening testified that, because she was busy getting ready to leave, she did not

see Mr. Zink put his hands on S.S., but she heard S.S. tell Mr. Zink to get his hands off him. A police officer who responded to the incident testified that he did not see any red marks on Mr. Zink's face and could not remember if Mr. Zink was wearing glasses.

{¶17} The credibility of the witnesses is primarily for the trier of the facts to determine. *State v. DeHass*, 10 Ohio St.2d 230 (1967), paragraph one of the syllabus. "In reaching its verdict, the jury was in the best position to evaluate the credibility of the witnesses and it was entitled to believe all, part, or none of the testimony of each witness." *State v. Shank*, 9th Dist. Medina No. 12CA0104-M, 2013-Ohio-5368, ¶ 29. Upon review of the record, although S.S. had been drinking at the time of the incident, we cannot say that the jury lost its way when it accepted his version of the facts and created such a manifest miscarriage of justice that Mr. Zink's conviction should be overturned. Mr. Zink's third assignment of error is overruled.

## III.

{¶18} Mr. Zink's assignments of error are overruled. The judgment of the Lorain County Court of Common Pleas is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Lorain, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period

for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

_____
JENNIFER HENSAL
FOR THE COURT


CARR, J.
SUTTON, J.
CONCUR.


APPEARANCES:

GIOVANNA BREMKE, Attorney at Law, for Appellant.

J.D. TOMLINSON, Prosecuting Attorney, and C. RICHLEY RALEY, JR., Assistant Prosecuting Attorney, for Appellee.