[Cite as *State v. Greenstreet*, 2023-Ohio-4224.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

| STATE OF OHIO | C.A. No.  30387 |
|---|---|
| Appellee | |
| v. | APPEAL FROM JUDGMENT ENTERED IN THE |
| GARRETT M. GREENSTREET | COURT OF COMMON PLEAS COUNTY OF SUMMIT, OHIO |
| Appellant | CASE No.  CR 21 10 3678 |

DECISION AND JOURNAL ENTRY

Dated: November 22, 2023

STEVENSON, Judge.

**{¶1}** Defendant-Appellant Garrett Greenstreet ("Greenstreet") appeals from the judgment of the Summit County Court of Common Pleas. For the reasons that follow, this Court affirms.

I.

**{¶2}** Greenstreet was indicted on one count of felonious assault by means of a deadly weapon in violation of R.C. 2903.11(A)(2)/(D)(1)(a), a felony of the second degree. The charges stemmed from a physical altercation that took place between Greenstreet and his roommate, C.P., that resulted in Greenstreet stabbing C.P. multiple times with a knife.

**{¶3}** Greenstreet pleaded not guilty to the charges and a jury trial was held. The State presented testimony from C.P., two eyewitnesses, four police officers, and a paramedic that responded to the scene. Greenstreet testified in his defense. Greenstreet moved for acquittal under

Crim.R. 29 after the State rested and renewed the motion at the end of trial. The trial court denied the motion both times.

{¶4} The jury found Greenstreet guilty, and the trial court sentenced him to an indefinite term of not less than five years and a maximum of not more than seven years and six months in prison. Greenstreet timely appealed and asserts two assignments of error for our review. For ease of analysis, Greenstreet's assignments of error will be addressed out of order.

II.

## ASSIGNMENT OF ERROR II

**THE TRIAL COURT ERRED IN OVERRULING THE MOTIONS FOR ACQUITTAL PURSUANT TO CRIMINAL RULE 29.**

{¶5} At trial, Greenstreet's defense was that he acted in self-defense when he stabbed C.P. Under this assignment of error, Greenstreet argues that the trial court erred in denying his Crim.R. 29 motions for acquittal because the State presented insufficient evidence to prove beyond a reasonable doubt that he did not use force in self-defense when he stabbed C.P.

{¶6} In *State v. Messenger*, 171 Ohio St.3d 227, 2022-Ohio-4562, the Ohio Supreme Court addressed the question of whether the State's burden of proof in rebutting a defendant's self-defense claim is subject to a sufficiency-of-the evidence standard of review. As in the instant case, Messenger argued at trial that he acted in self-defense and moved for an acquittal under Crim.R. 29 after the State rested and again at the end of trial. *Id*. at ¶ 7. Both motions were denied. *Id*.

{¶7} The Ohio Supreme Court accepted the appeal in *Messenger* on the following proposition of law: "'Self-defense claims may be reviewed on direct appeal for sufficiency of the evidence.'" *Id.* at ¶ 12. The *Messenger* Court first addressed the legislative amendment to R.C. 2901.05(B)(1), which changed the procedure for adjudicating criminal cases involving evidence of self-defense, noting that it "triggers the state's duty to disprove self-defense so long as 'there is

evidence presented that tends to support that the accused person used the force in self-defense.'"

*Id.* at ¶ 20, quoting R.C. 2901.05(B)(1).

{¶8}    The *Messenger* Court then clarified that:

The change to the state's burden of persuasion regarding self-defense in R.C. 2901.05(B)(1) did not change the elements of [the defendant's] charged offenses * * *. *A statutory requirement that the state must disprove an affirmative defense beyond a reasonable doubt does not in itself cause the affirmative defense to become an element of the offense. Self-defense remains an affirmative defense in Ohio, and an affirmative defense is not an element of a crime*[.]

(Emphasis added.) (Internal citations omitted.)  *Id.* at ¶ 24.

{¶9}    With the foregoing in mind, the *Messenger* Court held that "[t]he State's new burden of disproving the defendant's self-defense claim beyond a reasonable doubt is subject to a manifest-weight review on appeal, *and the Tenth District correctly declined to review the state's rebuttal of self-defense for sufficiency of the evidence*." *Id.* at ¶ 27. (Emphasis added.).  In so holding, the *Messenger* Court recognized the Tenth District's explanation that "the sufficiency-of-the evidence standard of review applies to [a defendant's] burden of production and a manifest-weight-of-the-evidence standard of review applies to the state's burden of persuasion."  *Id.* at ¶ 26.

{¶10}    This Court recently applied *Messenger* in *State v. McElroy*, 9th District Lorain No. 22CA011846, 2023-Ohio-1609. In *McElroy,* the jury returned a guilty verdict, finding that McElroy "did not act in self-defense or in the defense of her residence in the death of the victim * * *." *Id* at ¶ 4.  McElroy orally moved for a Crim.R. 29 acquittal at the close of the state's case, at the close of all the evidence, and again after the jury's verdict. *Id.* at ¶ 3, 5.  McElroy also filed a written motion which the State opposed. *Id.* at ¶ 5.  The trial court granted McElroy's motion, stating that the State failed to present sufficient evidence to disprove the affirmative defense of self-defense. *Id.* at ¶ 6.  The State appealed to this Court, assigning as error that the trial court improperly applied a sufficiency-of-the evidence analysis to McElroy's self-defense claim.

{¶11} Relying on *Messenger*, this Court agreed with the State that its burden of disproving the defense of self-defense was subject to a manifest weight review on appeal rather than a sufficiency analysis, and thus, the trial court erred in granting McElroy's Crim.R. 29 motion for acquittal. *Id.* at ¶ 14.

{¶12} Accordingly, based on the authority of *Messenger* and *McElroy*, we must apply a manifest weight of the evidence standard of review to the State's burden of disproving self-defense rather than a sufficiency of the evidence review in the instant matter. *Messenger* at ¶ 27. Therefore, Greenstreet's assignment of error is without merit and overruled.

**ASSIGNMENT OF ERROR I**

**APPELLANT'S CONVICTION IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE BECAUSE THE EVIDENCE FAILS TO PROVE BEYOND A REASONABLE DOUBT THAT APPELLANT WAS NOT ACTING IN SELF-DEFENSE.**

{¶13} When considering a challenge to the manifest weight of the evidence, this Court is required to consider the entire record, "weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Otten*, 33 Ohio App.3d 339, 340 (9th Dist.1986). "A reversal on this basis is reserved for the exceptional case in which the evidence weighs heavily against the conviction." *State v. Croghan*, 9th Dist. Summit No. 29290, 2019-Ohio-3970, ¶ 26. This Court "'will not overturn a conviction as being against the manifest weight of the evidence simply because the trier of fact chose to believe the State's version of events over another version.'" *State v. Warren*, 9th Dist. Summit No. 29455, 2020-Ohio-6990, ¶ 25, quoting *State v. Tolliver*, 9th Dist. Lorain No. 16CA010986, 2017-Ohio-4214, ¶ 15.

{¶14} It is undisputed that the altercation between C.P. and Greenstreet began inside their residence at 842 Austin Avenue after they returned from a night of drinking and shooting pool at two local bars. Greenstreet's friend, J.B., was also present at the residence. C.P. and Greenstreet got into an argument over Greenstreet's relationship with C.P.'s girlfriend. C.P. attacked Greenstreet, pushing him up against the wall and punching him in the face. Greenstreet fled outside. C.P. followed him, put him on the ground, and assaulted him again. The neighbor across the street, J.S., called out for them to stop fighting and they stopped. Greenstreet retreated inside the house. He locked the doors, proceeded to smash some of C.P.'s valuables, and called 911.

{¶15} C.P. testified that he decided the fight was over when Greenstreet retreated to the house. He thought he might be able to stay with a neighbor for a while and started to walk away. Upon hearing that Greenstreet was smashing his belongings, C.P. tried to enter the home but discovered the doors were locked, so he kicked the side door open, thinking he could salvage his belongings. Instead, he restrained himself and did not go inside, fearing that something "bigger and heavier" would transpire. C.P. asked J.B. for a ride out of the neighborhood to flee from the situation, but J.B. did not want to be involved and refused. C.P. walked to a neighbor's yard and hid in the flower bed.

{¶16} The recording of Greenstreet's 911 call from inside the residence reflects that he told the 911 operator C.P. had come back inside the house and stabbed him. Greenstreet later admitted during his testimony that he had lied about that fact. J.B. and J.S. both corroborated C.P.'s testimony that C.P. never went back inside the house after he kicked the side door.

{¶17} A few minutes later, Greenstreet came back outside, went across the street to J.S.'s house, knocked on her door, and asked her if she was hiding C.P. C.P., J.S., and J.B., all testified

that Greenstreet yelled that he was going to kill C.P. C.P. overheard Greenstreet from his hiding place in the neighbor's flower bed. Greenstreet then went back inside the house.

{¶18} According to C.P.'s testimony, thinking that things had calmed down, he got up from the flower bed and started walking in the middle of the street towards the intersection of Austin Ave. and Virginia Ave. when he saw Greenstreet "bee lining" towards him. C.P. drew back with his left hand to punch Greenstreet, but before the punch landed, Greenstreet struck C.P. in the stomach with a knife, causing C.P. to fall to the ground.

{¶19} J.B. testified that after Greenstreet returned home from J.S.'s house, Greenstreet came running outside with a knife in his hand, which he then used to attack C.P. while standing over him. J.B. further testified that while C.P. was on the ground, J.B. saw Greenstreet cutting his own hand with the knife.

{¶20} Greenstreet testified that when he left J.S.'s house and returned home, C.P. was inside "yelling and freaking out." Greenstreet said he went up to the front door but did not go inside. According to Greenstreet, C.P. came outside screaming Greenstreet's name and chasing Greenstreet around the outside of the house and into the middle of the street. Greenstreet claims that he then ran at C.P., saw C.P. lunging toward him with his fists, and attempted to block him, but C.P. stabbed Greenstreet's left hand and dropped the knife on the ground. Greenstreet said he picked up the knife and used it to stab C.P. "because [he] didn't know what else to expect."

{¶21} C.P. denied ever having a knife. J.S. and J.B. both testified that they never saw C.P. with a knife. Greenstreet testified that he ran at C.P., rather than back to the house where he could have escaped further problems, because he was angry that C.P. had embarrassed him by beating him up.

**{¶22}** Greenstreet stabbed C.P. nine times, injuring his wrist, chest, lung, leg, buttocks, and colon. J.B. called 911. Ten minutes elapsed between the time of Greenstreet's 911 call from inside the residence and J.B.'s 911 call. The police and paramedics responded. C.P. and Greenstreet were transported to the hospital and treated for their injuries. C.P. required surgery and physical therapy to recover from his injuries. Greenstreet was treated for the injury to his hand.

**{¶23}** Greenstreet does not contest that he committed the crime of felonious assault under R.C. 2903.11(A)(2)/(D)(1)(a). He argues that he acted in self-defense when he stabbed C.P. multiple times.

> Self-defense requires that a defendant: (1) was not at fault in creating the situation giving rise to the affray; (2) had a bona fide belief that he was in imminent danger of * * * great bodily harm and that his only means of escape * * * was in the use of such force; and (3) did not violate any duty to * * * avoid the danger.

*State v. Zink*, 9th Dist. Lorain No. 21CA011813, 2023-Ohio-1250, ¶ 9, quoting *State v. Warren*, 9th Dist. Summit No. 29455, 2020-Ohio-6990, ¶ 12, citing *State v. Barnes*, 94 Ohio St.3d 21, 24 (2002). "'All three of these elements must be present to establish self-defense.'" *Id*. Also, "[t]he defense of self-defense is not available if the defendant used more force than was reasonably necessary and if the force used was greatly disproportionate to the apparent danger." *State v. Wright*, 6th Dist. Lucas No. L-16-1053, 2017-Ohio-1225, ¶ 28, citing *State v. Gray*, 2d Dist. Montgomery No. 26473, 2016-Ohio-5869, ¶ 8*; State v. Johnson*, 6th Dist. Lucas No. L-08-1325, 2009-Ohio-3500, ¶ 12.

**{¶24}** Greenstreet contends that the three episodes of the fight between him and C.P. constituted one continuous course of events. Based on that contention, he argues that his conduct satisfies the elements of a self-defense claim because: 1) C.P. was the one at fault in creating the situation giving rise to the stabbing because C.P. started the fistfight; 2) he had a bona fide belief

that he was in imminent danger of death or great bodily harm and was trying to avoid further injury when he stabbed C.P. because C.P. had tried to get back into the house after beating him up twice; 3) C.P. stabbed him first; and 4) he did not violate any duty to retreat or avoid the danger. Greenstreet maintains that this is the exceptional case in which the evidence weighs heavily against the conviction and that the jury lost its way in concluding that he was not acting in self-defense.

{¶25} We note preliminarily that in accordance with Ohio's new stand-your-ground law, which eliminated the duty to retreat from an attacker in any place in which one is lawfully present, the trial court instructed the jury not to consider the possibility of retreat as a factor in determining whether Greenstreet reasonably believed that the use of force in self-defense was necessary. *See* R.C. 2901.09(B) and (C). Thus, whether Greenstreet violated a duty to avoid the danger by not retreating is not an issue in this case.

{¶26} The State conceded that C.P. started the fistfight and was responsible for beating up Greenstreet two times; once inside the residence and a second time outside. The State also concedes that Greenstreet presented some evidence tending to support the use of force in self-defense, thus triggering its "duty to disprove self-defense." *Messenger,* 171 Ohio St.3d 227, 2022-Ohio-4562, at ¶ 20. However, the State argues that Greenstreet's self-defense opportunity expired after the second fistfight when Greenstreet retreated inside the home and C.P. walked away, and that Greenstreet was the initial aggressor in the stabbing incident. The State maintains that Greenstreet started a new fight and escalated the situation when he came back outside carrying a knife ten minutes after the fistfight was over. The State further avers that at that time, Greenstreet no longer had a reason to believe he was in imminent danger, and that even if he did, his use of a knife in defense of a fistfight constituted unreasonable force.

{¶27} The State presented evidence that after the two fistfights were over, Greenstreet obtained a knife from inside the residence, went outside looking for C.P. who was hiding from Greenstreet, told J.S. he wanted to kill C.P., then later encountered C.P. in the street and repeatedly stabbed him with a knife. The testimony of C.P., J.S. and J.B. was consistent with one another. They all testified that after the second fistfight was over and Greenstreet locked himself inside the residence, C.P. kicked the side door in upon realizing that Greenstreet was destroying his belongings, but that C.P. never went back inside. C.P., J.S., and J.B. all said they overheard Greenstreet tell J.S. he wanted to kill C.P. J.B. also testified that Greenstreet came outside carrying a knife and later saw Greenstreet cut his own hand. None of the State's witnesses testified that they ever saw C.P. with a knife.

{¶28} Contrary to Greenstreet's testimony, the testimony of C.P., J.S., and J.B. all show that C.P. did not initiate the stabbing, but instead, after the fight was over and ten minutes after Greenstreet's 911 call, Greenstreet came out of the residence with a knife in his hand, threatening to kill C.P., and without provocation, stabbed C.P. The jury was free to believe the State's evidence and disbelieve Greenstreet. The State presented evidence from which the jury could have reasonably concluded that the altercation between C.P. and Greenstreet was over after the second fistfight, that C.P. did not have a knife, and that Greenstreet reinitiated the "situation giving rise to the affray" when he pursued C.P. with a knife and stabbed him. *Zink*, 9th Dist. Lorain No. 21CA011813, 2023-Ohio-1250, at ¶ 9.

{¶29} The jury could have also reasonably concluded from the State's evidence that Greenstreet did not have a bona fide belief that he was in imminent danger of great bodily harm when he stabbed C.P. C.P. testified that he had walked away, was hiding in the neighbor's flower bed, and was hoping to get a ride out of the neighborhood and remove himself from the situation.

Greenstreet himself testified that he thought C.P. was hiding at J.S.'s house. Thus, the jury could have inferred that Greenstreet believed C.P. had withdrawn from the situation and was no longer a threat. Furthermore, although Greenstreet retreated to his home after leaving J.S.'s house, he came back outside rather than remain inside until the police arrived, which contradicts his testimony that he was in fear of C.P. The jury was free to reject his testimony that he stabbed C.P. because he feared for his life and/or that he would suffer great bodily harm.

{¶30} The jury could have further reasonably concluded that Greenstreet's use of a knife in defense of C.P. was not Greenstreet's "only means of escape." *Zink* at ¶ 9. As previously noted, J.B. and J.S. corroborated C.P.'s testimony that he never had a knife in his hand. Thus, the jury was free to disbelieve Greenstreet and find that Greenstreet's use of a knife was not reasonably necessary, and was disproportionate, unreasonable force in self-defense. *See State v. Moore*, 9th Dist. Summit No. 29581, 2023-Ohio-2864, ¶ 14; *Wright*, 6th Dist. Lucas No. L-16-1053, 2017-Ohio-1225, ¶ 28; *Johnson*, 6th Dist. Lucas No. L-08-1325, 2009-Ohio-3500, at ¶ 12.

{¶31} The jury heard testimony from C.P., Greenstreet, two eyewitnesses, the paramedic, and four police officers. The jury listened to the 911 calls and viewed videos from J.B.'s cell phone and the responding officers' body-worn cameras. The jury chose not to find Greenstreet credible. The jury, as the trier of fact, was in the best position to evaluate the credibility of the testimony and evidence and was free to believe the State's theory of the events and reject Greenstreet's version. *State v. Shank*, 9th Dist. Medina No. 12CA0104-M, 2013-Ohio-5368, ¶ 29. Accordingly, the jury's determination that Greenstreet did not act in self-defense is not against the manifest weight of the evidence. Greenstreet's first assignment of error is overruled.

III.

**{¶32}** Based on the foregoing, the judgment of the Summit County Court of Common Pleas is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

SCOT STEVENSON
FOR THE COURT

SUTTON, P. J.
CARR, J.
CONCUR.

APPEARANCES:

PAUL E. MEYER, Attorney at Law, for Appellant.

SHERRI BEVAN WALSH, Prosecuting Attorney, and HEAVEN R. DIMARTINO, Assistant Prosecuting Attorney, for Appellee.